IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00153-LTB-MEH

JERRY LEE BUSTOS,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
BUREAU OF PRISONS,
HARRELL WATTS, individually and as Administrator, Federal Bureau of Prisons,
MICHAEL K. NALLEY, individually and as Regional Director, Bureau of Prisons,
R. WILEY, individually and as Warden, U.S.P. Admin. Max.,
COLLINS, individually and as Unit Manager, U.S.P. Admin. Max.,
JOHN DOE #1, individually and officially,
JOHN DOE #2, individually and officially,
JOHN DOE #3, individually and officially, and
A&E TELEVISION NETWORKS,

    Defendants.

## ORDER ON DEFENDANT AETN'S MOTION FOR SEQUENCED DISCOVERY AND FOR PROTECTIVE ORDER

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendant AETN's Motion for Sequenced Discovery and for Protective Order, under Federal Rule of Civil Procedure 26(c) & (d), Prohibiting the Plaintiff from Serving Written Discovery or Deposing AETN Defendants Until AETN may Conduct Discovery into the Substantial Truth of AETN's Publication Concerning the Plaintiff [filed February 27, 2009; docket #149]. The matter is referred to this Court. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons set forth below, the Court **denies** Defendant AETN's Motion.

**I.      Background**

Plaintiff is a federal inmate at the United States Penitentiary, Administrative Maximum ("ADX") facility in Florence, Colorado. Plaintiff initiated this action *pro se* on January 24, 2008. After counsel entered their appearance on behalf of Plaintiff, the Court allowed Plaintiff to submit a Fourth Amended Complaint on November 26, 2008, which is the operative pleading in this matter. (Docket #114.) Plaintiff brings suit against the federal defendants for injunctive relief and money damages, alleging violations of the Fourth, Fifth, and Eighth Amendments of the Constitution, 18 U.S.C. § 4042, existing prison policy, and various tort claims brought pursuant to the Federal Tort Claims Act ("FTCA"). (*See id.*) Plaintiff sues A&E Television Networks (also referred to as "AETN") for money damages, alleging tort claims including invasion of privacy, defamation and conspiracy. (*Id.*)

The facts giving rise to Plaintiff's claims extend back to November 1998, when ADX cameras recorded a fight occurring between an African-American inmate and Plaintiff, who is Mexican-American. (*Id.* at 7.) Plaintiff represents to the Court that the fight was not gang-related, and Plaintiff "was not, and is not, a member of any gang." (*Id.*) Almost nine years later, Plaintiff learned that Defendant A&E Television Networks had broadcast the prison recording as part of a series titled "*Gangland*," and his identity in the video could be clearly viewed. Plaintiff contends *Gangland* "depicts [Plaintiff] as an Aryan Brotherhood member and shows [him] carrying out violent acts on behalf of the Aryan Brotherhood." (*Id.*)

Plaintiff alleges the *Gangland* episode featuring Plaintiff as "an Aryan Brotherhood member" was broadcast to the public and to the ADX prison population on a weekly basis for approximately six months. (*Id.* at 2, 8.) Plaintiff contends that, "[a]s a direct result of *Gangland*, [Plaintiff]

2

received threats of violence and death on several occasions from Aryan Brotherhood, DC Blacks, and Mexican Mafia gang members." (*Id*. at 9.) Plaintiff asserts he is now perceived as "an undercover Aryan Brotherhood enforcer" which makes him a "target for violent acts of revenge." (*Id*. at 9.)

Plaintiff represents that he requested Defendant A&E, who owns the copyright to *Gangland*, to cease showing the pertinent episode because of its "factually incorrect" nature. A&E did not respond to Plaintiff's letter, dated October 3, 2007, nor did it stop broadcasting *Gangland*. (*Id*. at 8.) Plaintiff also describes his requests for protection submitted to the Bureau of Prisons ("BOP") through the administrative remedies process, asking to be transferred out of ADX and not to the ADX's "General Population Step Down program," where he could be subjected to violence due to the misperception of his affiliation with the Aryan Brotherhood, as depicted in *Gangland*. (*Id*. at 9-11 (explaining Plaintiff submitted an Informal Resolution Form on July 2, 2007; a Request for Administrative Remedy on July 9, 2007; a Regional Administrative Remedy Appeal on August 9, 2007; and a Central Office Administrative Remedy Appeal on September 28, 2007).) Plaintiff contends the BOP denied each request on the ground that procedurally, Plaintiff must complete the General Population Step Down program before he could be transferred from the ADX. (*Id*.) On November 13, 2007, the BOP transferred Plaintiff from G-Unit to the step-down program in J-Unit within ADX, which is where Plaintiff currently resides. (*Id.* at 9-10.) Presently, Plaintiff states there are no Aryan Brotherhood, DC Blacks, or Mexican Mafia gang members in his section of the J-Unit. (*Id*. at 9.) However, Plaintiff asserts that as he "continues to progress through the step-down program, he will be exposed to Aryan Brotherhood, Mexican Mafia, or DC Blacks gang members directly and on a daily basis." (*Id*. at 11.) Plaintiff alleges that, as a result of Defendants' actions

3

leading to the broadcast of *Gangland*, the repetitive showings of the *Gangland* episode showing the recording involving Plaintiff, and the subsequent threats from other inmates, he "has lost a significant amount of weight, and has consistently been unable to sleep, recreate, or bathe for anticipation and fear of attack." (*Id.*)

Both A&E Television Networks and the federal defendants responded to Plaintiff's Fourth Amended Complaint with Motions to Dismiss. (*See* Dockets #115, 117.) A&E seeks the Court to dismiss Plaintiff's Fifteenth and Sixteenth Claims for Relief pursuant to Fed. R. Civ. P. 12(b)(6), for failing to state claims of Invasion of Privacy by Intrusion and by Appropriation, respectively. (Docket #117 at 7.) The federal defendants move to dismiss all of Plaintiff's claims against the named federal defendants, not including A&E Television Networks nor the three designated John Doe defendants, pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6). (Docket #115 at 1, n.1.)

In the motion presently before the Court, Defendant AETN requests the Court to enter a Fed. R. Civ. P. 26(c) protective order prohibiting the Plaintiff from serving written discovery or conducting depositions of Defendant AETN "until after AETN completes its discovery into the substantial truth of the allegedly defamatory statements . . . and the plaintiff establishes that there is a triable issue - under the 'clear and convincing evidence' standard - on that question." (Docket #149 at 17.) AETN also seeks the sequencing of discovery in this matter pursuant to Fed. R. Civ. P. 26(d). AETN believes Plaintiff will not be able to meet his burden of proving defamation, because Plaintiff is "associated with a violent and racist prison gang," the Mexikanemi, despite the fact that the episode of *Gangland* describes Plaintiff as a member of the Aryan Brotherhood, not the Mexikanemi. (*Id*. at 2, 8.) Moreover, AETN invokes the protections of the Colorado Press Shield, which provides a qualified privilege to a "newsperson" precluding the disclosure of news

4

information "received, observed, procured, processed, prepared, written, or edited by a newsperson, while acting in the capacity of a newsperson." C.R.S. § 13-90-119.

In response, Plaintiff emphasizes that the primary issue of defamation in this matter is not whether Plaintiff is a member of a "violent and racist prison gang," but whether he is a member of the Aryan Brotherhood, as allegedly portrayed in Defendant AETN's *Gangland* documentary. (Docket #156 at 3.) Plaintiff further argues that AETN's assertion of the Colorado Press Shield statute in this matter is at best premature, as the Court has not determined the choice of law, nor can AETN properly invoke a blanket privilege. (*Id.* at 13-14.) Additionally, Plaintiff contends that AETN cannot establish the application of the Colorado Press Shield to these proceedings, because the privilege attaches to sources "obtained" by a newsperson, not such "recklessly generat[ed] . . . in its own mind." (*Id.* at 15.) In addressing a balancing of interests, Plaintiff urges the Court to find that Plaintiff's "life interest unquestionably outweighs any first amendment interest" AETN may contend regarding the alleged defamation, as well as any "right the general public might have to receive false news information." (*Id.* at 18.)

In its reply, AETN narrows its request to discovery related to its state of mind and clarifies that it seeks to limit the first phase of discovery to the issue of falsity. (Docket #157 at 2, 10.) AETN also reiterates its characterization of the issue at hand, that the "gist" of the *Gangland* episode at issue is such that the Aryan Brotherhood is a violent and racist prison gang, and Plaintiff cannot dispute the same is true of the Mexikanemi. (*Id.* at 4.) Therefore, according to the logic propounded by AETN, if Plaintiff cannot prove by clear and convincing evidence that he is not nor was not affiliated with the Mexikanemi prison gang, AETN would be "entitled to summary judgment on the grounds of substantial truth." (*Id.* at 5.) Crucial to this assertion is AETN's proposition that "the

5

defamatory nature of a statement is judged by the likely impact of the communication not . . . the prison population in the Florence ADX . . ., but on the impact such statement has upon 'right-thinking persons.'" (*Id*. at 7.)

## II.     Discussion

### A.     *Fed. R. Civ. P. 26(c) and (d) Standard*

The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). Such protection is warranted, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."). Fed. R. Civ. P. 26(d) allows the court, "for the parties' and witnesses' convenience and in the interests of justice," to appropriately sequence discovery.

The good cause standard of 26(c) is not met by conclusory statements. *Klesch & Co. Ltd. v. Liberty Media Corp.,* 217 F.R.D. 517, 524 (D. Colo. 2003). Instead, "the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to that moving party." *Id.* (citing *Exum v. United States Olympic Committee,* 209 F.R.D. 201, 206 (D. Colo. 2002)). As a general rule, the "good cause" calculation requires that the Court balance "the [moving] party's need for information against the injury which might result from unrestricted

disclosure." *Exum,* 209 F.R.D at 206 (citations omitted).  Additionally, the Court should consider any privacy interests and whether the case implicates issues important to the public. *Id.*

### B.     *Elements of Defamation*

In Colorado, a cause of action for defamation, both slander and libel, requires:

> (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication.

*Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983) (citing *Williams v. Burns*, 540 F. Supp. 1243 (D. Colo. 1982)); *see, e.g., Tassio v. Mullarkey*, No. 07-cv-02167-WYD-KMT, 2008 WL 3166149, at *18 (D. Colo. Aug. 5, 2008); *Brudwick v. Minor*, No. 05-cv-00601-WYD-MJW, 2006 WL 1991755, at *20 (D. Colo. July 13, 2006); *Glaeser v. Academy School Dist. 20*, No. 01-cv-00384-JLK (CBS), 2005 WL 2592477, at *2 (D. Colo. Oct. 13, 2005).  When a matter of public concern constitutes the subject matter of the allegedly defamatory statement, plaintiff must prove actual malice on part of defendant by clear and convincing evidence.  Plaintiff can demonstrate actual malice by establishing defendant knew that the contentious statement was false, or issued such statement with reckless disregard as to its falsity.  *Brudwick*, No. 05-cv-00601-WYD-MJW, 2006 WL 1991755, at *21 (citing *Diversified Mgmt., Inc. v. The Denver Post, Inc*., 653 P.2d 1103-09 (Colo. 1982)); *see also Tassio*, No. 07-cv-02167-WYD-KMT, 2008 WL 3166149, at *19. "'Substantial truth' is an affirmative defense to a defamation action" in Colorado.  *Anderson v. Cramlet*, 789 F.2d 840, 843 (10th Cir. 1986) (stating "[a] defendant asserting truth as a defense in a libel action is not required to justify every word of the alleged defamatory matter; it is sufficient

if the substance, the gist, the sting, of the matter is true." (citations omitted)) (citing *Gomba v. McLaughlin*, 504 P.2d 337, 338-39 (Colo. 1972)).

### C.   *Colorado Press Shield*

Plaintiff's allegations against the federal defendants in this matter arise under federal law, yet the claims against Defendant AETN derive from state tort law. Thus, consistent with this jurisdiction's prior determinations and Fed. R. Evid. 501, the Court applies Colorado law in evaluating Defendant's asserted privilege. *E.g., Quigley v. Rosenthal*, 43 F. Supp. 2d 1163, 1172-73 (D. Colo. 1999) (evaluating journalist privilege pursuant to the Colorado Press Shield in the context of a defamation claim within a suit brought under Section 1983 of 42 U.S.C. and the Federal Wiretap Act).[1] In pertinent part, the statute known as the Colorado Press Shield provides,

> no newsperson shall, without such newsperson's express consent, be compelled to disclose, be examined concerning refusal to disclose, be subjected to any legal presumption of any kind, or be cited, held in contempt, punished, or subjected to any sanction in any judicial proceedings for refusal to disclose any news information received, observed, procured, processed, prepared, written, or edited by a newsperson, while acting in the capacity of a newsperson;

C.R.S. § 13-90-119(2)(a) (2005). The statute lists a few notable caveats. The privilege of nondisclosure affirmatively excludes "news information which has actually been published or broadcast through a medium of mass communication." C.R.S. § 13-90-119(2)(b). Additionally, paragraph three of the statute articulates another exclusion, in that a party to a legal proceeding may issue a subpoena for the allegedly privileged information, and may oppose a motion to quash such subpoena by establishing by a preponderance of the evidence,

---

[1] The Court agrees with Defendant that the Court may properly apply the Colorado Press Shield state statute in this federal case, and the Tenth Circuit's review of *Quigley* does not indicate otherwise.

> (a) That the news information is directly relevant to a substantial issue involved in the proceeding;
> (b) That the news information cannot be obtained by any other reasonable means; and
> (c) That a strong interest of the party seeking to subpoena the newsperson outweighs the interests under the first amendment to the United States constitution of such newsperson in not responding to a subpoena and of the general public in receiving news information.

C.R.S. § 13-90-119(3)(a-c).

### III.   Analysis

After sifting through Defendant AETN's briefing of this motion, the Court infers that AETN believes allowing discovery at this stage of the litigation into all issues would cause an undue burden for AETN, and that the Colorado Press Shield privilege applies to discovery sought regarding AETN's state of mind. Thus, AETN requests the Court to enter a protective order purposed to sequence discovery to first adjudicating the issue of "substantial truth" and "postponing" both written and deposition discovery directed toward actual malice until after the resolution of a motion for summary judgment. The Court addresses these arguments in turn.

Regarding the requisite standard utilized to justify the entry of a protective order, Defendant AETN contends discovery regarding "substantial truth" should occur prior to discovery regarding its state of mind. Although the Court generally agrees with Defendant on this issue, the Court also agrees with Plaintiff's assessment that falsity is relevant to the narrow question of whether Plaintiff is a member of the Aryan Brotherhood, not whether Plaintiff is a member of the more broadly couched "violent and racist prison gang." In reviewing the Fourth Amended Complaint, Plaintiff bases his claim of defamation against AETN on his allegation that "A&E's broadcast falsely depicted Bustos both as the aggressor in the fight with Moore and as a member of the Aryan Brotherhood." (Docket #114 at 19, ¶ 128.) Plaintiff makes no reference to the generalization

described by AETN, that alluding to his supposed membership in a "violent and racist prison gang" constitutes a defamatory statement.

The Court agrees with Plaintiff, that "[c]lassification can lead to grave consequences in federal prison." (Docket #156 at 11.) *See Johnson v. California*, 543 U.S. 499, 533-34 (2005) (distinguishing between five major prison gangs in the United States: "the Aryan Brotherhood, the Black Guerrilla Family, the Mexican Mafia, La Nuestra Familiar, and the Texas Syndicate," and recognizing that "interracial murders and assaults among inmates perpetrated by these gangs are common."). Defendant AETN boldly states, "proof that Mr. Bustos is or was, at the time of the altercation depicted in the documentary, affiliated with the Mexikanemi prison gang . . . would establish the substantial truth of an implication that he was a member of the Aryan Brotherhood." At this early stage of the litigation, the Court declines to affirm such assertion, and balancing the parties' respective interests prompts no different conclusion.

Regarding the application of the Colorado Press Shield statute as a basis for entering a protective order and sequencing discovery, the Court also agrees with Plaintiff, that Defendant AETN's request is premature. The Court believes that should the privilege apply, Defendant will have to assert so at the proper time during the discovery process and do so in compliance with Fed. R. Civ. P. 26(b)(5). This District generally disfavors stays of discovery and umbrella protective orders, and Defendant's tenuous assertion of privilege fails to provide a sound basis for the Court to grant the relief it seeks. *Chavez v. Young Am. Ins. Co.*, No. 06-cv-02419-PSF-BNB, 2007 WL 683973, at *2 (D. Colo. Mar. 2, 2007) (stay of discovery) (citation omitted); *Gillard v. Boulder Valley Sch. Dist.*, 196 F.R.D. 382, 386 (D. Colo. 2000) (umbrella protective orders).

To briefly conclude, the Court sees two main problems with sequencing discovery in this

matter. First, the Court believes the issue of substantial truth is not as clear-cut as Defendant AETN represents in this motion. Thus, the Court agrees with Plaintiff that the sequencing of discovery as requested could likely lead to duplicative proceedings, in that denial of Defendant AETN's prospective Motion for Summary Judgment would necessitate repeating the discovery process on the question of actual malice. Second, the Court perceives AETN's argument regarding the application of the Colorado Press Shield law as premature. If, through the process of discovery, Defendant AETN finds good cause to assert such privilege, the Court would review an appropriate request for a protective order. However, considering the requisite standards under Fed. R. Civ. P. 26(c) and (d), the Court exercises its discretion in determining the entry of a protective order precluding Plaintiff from serving written discovery or conducting depositions is not in the interests of justice or judicial economy at this time.

## IV.   Conclusion

Accordingly, for the reasons stated above, it is hereby ORDERED that Defendant AETN's Motion for Sequenced Discovery and for Protective Order, under Federal Rule of Civil Procedure 26(c) & (d), Prohibiting the Plaintiff from Serving Written Discovery or Deposing AETN Defendants Until AETN may Conduct Discovery into the Substantial Truth of AETN's Publication Concerning the Plaintiff [filed February 27, 2009; docket #149] is **DENIED**.

Dated at Denver, Colorado, this 12th day of May, 2009.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge