IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00153-LTB-MEH

JERRY LEE BUSTOS,

      Plaintiff,

v.

UNITED STATES OF AMERICA,
BUREAU OF PRISONS,
HARRELL WATTS, individually and as Administrator, Federal Bureau of Prisons,
MICHAEL K. NALLEY, individually and as Regional Director, Bureau of Prisons,
R. WILEY, individually and as Warden, U.S.P. Admin. Max.,
COLLINS, individually and as Unit Manager, U.S.P. Admin. Max.,
JOHN DOE #1, individually and officially,
JOHN DOE #2, individually and officially,
JOHN DOE #3, individually and officially, and
A&E TELEVISION NETWORKS,

      Defendants.

---

## RECOMMENDATION ON FEDERAL DEFENDANTS' MOTION TO DISMISS

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Pending before the Court is the federal defendants' Motion to Dismiss Plaintiff's Fourth

Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6) [filed December

19, 2008; docket #115].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. LCivR 72.1C, the

matter is referred to this Court for recommendation.  (Docket #123.)  The Motion is fully briefed,

and oral argument would not materially assist the Court in its adjudication.  For the reasons set forth

below, the Court RECOMMENDS that the federal defendants' Motion to Dismiss be **GRANTED**

**IN PART AND DENIED IN PART**.[1]

---

[1]Be advised that all parties shall have ten (10) days after service hereof to serve and file any
written objections in order to obtain reconsideration by the District Judge to whom this case is
assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings
or recommendations to which the objections are being made.  The District Court need not consider

## I.      Background

Plaintiff is an inmate at the United States Penitentiary, Administrative Maximum ("ADX") facility in Florence, Colorado.  Plaintiff initiated this action *pro se* on January 24, 2008.  After counsel entered their appearance on behalf of Plaintiff, the Court allowed Plaintiff to submit a Fourth Amended Complaint on November 26, 2008, which is the operative pleading in this matter. (Docket #114.)  Plaintiff brings suit against the federal defendants for injunctive relief and money damages, alleging violations of the Fourth, Fifth, and Eighth Amendments of the Constitution, 18 U.S.C. § 4042, existing prison policy, and various tort claims brought pursuant to the Federal Tort Claims Act ("FTCA").  (*See id.*)  Plaintiff sues A&E Television Networks for money damages, alleging tort claims including invasion of privacy, defamation and conspiracy.  (*Id.*)

The facts giving rise to Plaintiff's claims extend back to November 1998, when a fight occurring at the ADX between an African-American inmate and Plaintiff, who is Mexican-American, was recorded.  (*Id.* at 7.)  Plaintiff represents to the Court that the fight was not gang-related, and Plaintiff "was not, and is not, a member of any gang."  (*Id.*)  Almost nine years later, Plaintiff learned that A&E Television Networks had broadcast the prison recording as part of a series titled "*Gangland*," and his identity in the video could be clearly viewed.  Plaintiff contends *Gangland* "depicts [Plaintiff] as an Aryan Brotherhood member and shows [him] carrying out violent acts on behalf of the Aryan Brotherhood."  (*Id.*)

---

frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

Plaintiff alleges the *Gangland* episode featuring Plaintiff as "an Aryan Brotherhood member" was broadcast to the public and to the ADX prison population on a weekly basis for approximately six months. (*Id*. at 2, 8.) Plaintiff contends that, "[a]s a direct result of *Gangland*, [Plaintiff] received threats of violence and death on several occasions from Aryan Brotherhood, DC Blacks, and Mexican Mafia gang members." (*Id*. at 9.) Plaintiff asserts he is now perceived as "an undercover Aryan Brotherhood enforcer," which makes him a "target for violent acts of revenge." (*Id*.)

Plaintiff represents that he requested A&E, which owns the copyright to *Gangland*, to cease showing the pertinent episode because of its "factually incorrect" nature. A&E did not respond to Plaintiff's letter, dated October 3, 2007, nor did it stop broadcasting *Gangland*. (*Id*. at 8.) Plaintiff also describes his requests for protection submitted to the Bureau of Prisons ("BOP") through the administrative remedies process, asking to be transferred out of ADX and not to the ADX's "General Population Step Down program," where he could be subjected to violence due to the misperception of his affiliation with the Aryan Brotherhood, as depicted in *Gangland*. (*Id*. at 9-11 (explaining Plaintiff submitted an Informal Resolution Form on July 2, 2007; a Request for Administrative Remedy on July 9, 2007; a Regional Administrative Remedy Appeal on August 9, 2007; and a Central Office Administrative Remedy Appeal on September 28, 2007).) Plaintiff contends the BOP denied each request on the grounds that procedurally, Plaintiff must complete the General Population Step Down program before he could be transferred from the ADX. (*Id*.) On November 13, 2007, the BOP transferred Plaintiff from G-Unit to the step-down program in J-Unit within ADX, which is where Plaintiff currently resides. (*Id*. at 9-10.) Presently, Plaintiff states there are no Aryan Brotherhood, DC Blacks, or Mexican Mafia gang members in his section of the J-Unit. (*Id*. at 9.) However, Plaintiff asserts that as he "continues to progress through the step-down program, he will be exposed to Aryan Brotherhood, Mexican Mafia, or DC Blacks gang members

directly and on a daily basis." (*Id*. at 11.)  Plaintiff alleges that, as a result of Defendants' actions leading to the broadcast of *Gangland*, the repetitive showings in the prison facility of the *Gangland* episode featuring the recording involving Plaintiff, and the subsequent threats from other inmates, he "has lost a significant amount of weight, and has consistently been unable to sleep, recreate, or bathe for anticipation and fear of attack." (*Id.*)

Both A&E Television Networks and the federal defendants responded to Plaintiff's Fourth Amended Complaint with Motions to Dismiss. (*See* Dockets #115, 117.)  A&E seeks the Court to dismiss Plaintiff's Fifteenth and Sixteenth Claims for Relief pursuant to Fed. R. Civ. P. 12(b)(6), for failing to state claims of Invasion of Privacy by Intrusion and by Appropriation, respectively. (Docket #117 at 7.)  The federal defendants move to dismiss all of Plaintiff's claims against the named federal defendants, not including A&E Television Networks nor the three designated John Doe defendants, pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6).  (Docket #115 at 1, n.1.)  The federal defendants assert Plaintiff failed to exhaust administrative remedies regarding his tort claims, the Court lacks personal jurisdiction over Defendants Watts and Nalley, the Court lacks subject matter jurisdiction over Plaintiff's statutory second claim, Plaintiff fails to state a claim for relief under the Eighth Amendment and does not adequately allege personal participation as required by *Bivens*, and each individual federal defendant is entitled to qualified immunity.  (*Id*. at 1-2.)

## II.     Standards of Review

### A.     *Dismissal under Fed. R. Civ. P. 12(b)(1)*

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A

4

court lacking jurisdiction "must dismiss the case at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225.

In a lawsuit against the United States or an agency of the United States, the United States must waive its sovereign immunity and consent to suit in order for a court to exercise subject matter jurisdiction over the case. *See, e.g., United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Lonsdale v. United States*, 919 F.2d 1440, 1442-44 (10th Cir. 1990). The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction. *See Basso*, 495 F.2d at 909. "The federal court derives its jurisdiction to entertain claims for damages against the United States" from Section 2675(a) of 28 U.S.C., the Federal Tort Claims Act ("FTCA"). *Bradley v. United States by Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991). "As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) (citations omitted). Accordingly, Plaintiff bears the burden of establishing that he properly exhausted administrative remedies with regards to his FTCA claims, thereby properly invoking waiver of federal sovereign immunity, in order for the Court to exercise subject matter jurisdiction.

5

### B.    Dismissal under Fed. R. Civ. P. 12(b)(2)

Fed. R. Civ. P. 12(b)(2) dictates a case may be dismissed for lack of personal jurisdiction. In a motion to dismiss pursuant to Rule 12(b)(2), the Plaintiff bears the burden of establishing that personal jurisdiction exists. *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Where a court chooses not to conduct an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdiction by showing, through affidavits or otherwise, facts that, if true, would support jurisdiction over the defendants. *OMI Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The allegations of a complaint must be taken as true, unless contradicted by other evidence, *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984), and to the extend that the defense evidence contradicts allegations in the complaint or opposing affidavits, all disputes must be resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient. *Id.*

### C.    Dismissal under Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the well-pleaded factual allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560-62 (2007). Courts should look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief -- that is -- a complaint must include "enough facts to state a claim for relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). The complaint must sufficiently allege facts supporting all of the elements necessary to establish an entitlement to relief under the legal theory

6

proposed. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (citation omitted). As the Tenth Circuit explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

III.    **Analysis**

A.      ***Subject Matter Jurisdiction over Plaintiff's Tort Claims against the United States***

The FTCA bestows on the federal court "its jurisdiction to entertain claims for damages against the United States." *Bradley*, 951 F.2d at 270. The statute of limitations regarding tort claims against the United States requires that such claim be "presented in writing to the appropriate Federal agency within two years after such claim accrues," or to the Court within six months after a notice of denial of the administrative claim is mailed by the petitioned agency. 28 U.S.C. § 2401(b). "As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *Duplan*, 188 F.3d at 1199 (citing 28 U.S.C. § 2675(a)); *McNeil v. United States,* 508 U.S. 106, 113, (1993) (holding the "FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies"); *Pipkin v. USPS,* 951 F.2d 272, 273 (10th Cir.1991) (holding exhaustion of administrative claims is a jurisdictional prerequisite to asserting claims under FTCA). Section 14.2 of 28 C.F.R. governs the presentation of an administrative claim. A claim is considered presented when the agency "whose activities gave rise to the claim" receives "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain . . . ; and the title or legal capacity of the person signing . . . ." 28 C.F.R. § 14.2(a), (b)(1). In order to have properly exhausted administrative remedies, Plaintiff must prove he first presented "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and

(2) a sum certain damages claim," to the BOP in accordance with Section 2675(a). *Bradley*, 951 F.2d at 270.   Plaintiff may not bring suit against the United States until the BOP denies the administrative claim presented or until the passage of six months after presentation of the claim.[2] 28 U.S.C. § 2675(a).

Claims Seven, Eight, Nine, and Ten of Plaintiff's Fourth Amended Complaint assert tort claims for money damages against the United States pursuant to the FTCA.  (Docket #114 at 14-17.) The federal defendants request the Court to dismiss these claims, because they believe Plaintiff did not properly submit the requisite claim documentation.  In the alternative, the federal defendants argue that Plaintiff failed to properly exhaust the requisite FTCA administrative remedies, therefore prematurely commencing this action.  (Docket #115 at 7-9.)

In his Fourth Amended Complaint, Plaintiff states he completed and signed a Standard Form 95 ("SF95") on December 19, 2007, and submitted it on December 20, 2007.  (Docket #114 at 6.) A copy of the envelope allegedly containing the properly executed form indicates the Department of Justice mail room received the envelope on January 17, 2008.  (Docket #114-2 at 9.)  The federal defendants assert that the Bureau of Prisons records pertaining to Plaintiff demonstrate only one properly completed tort claim, dated December 21, 2007, related to replacement of property Plaintiff asserted was taken from him and not related to any of the claims in Plaintiff's Fourth Amended Complaint.  (Docket #115-2 at 4-5.)  In his response to the Motion to Dismiss, Plaintiff further explains that he first submitted an SF95 on October 3, 2007, and mailed it to the Director, Torts Branch, Civil Division at the U.S. Department of Justice.  (Docket #130 at 8.)  He then describes how he received a notice from the Department of Justice on December 19, 2007, indicating the form

---

[2]"The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim . . . ."  28 U.S.C. § 2675(a).

he sent on October 3, 2007, which was received on October 15, 2007, lacked a signature. (*Id. See also* docket #114-2 at 5.)  This letter instructed Plaintiff to sign the form and resubmit his claim. (*Id.*)  Plaintiff affirms he prepared and signed a new SF95 on the same date and gave the envelope to his prison counselor to be mailed.  (*Id.*)  Plaintiff references the exhibits included with his Fourth Amended Complaint, namely the notice from the Department of Justice regarding the first unsigned SF95 (docket #114-2 at 1); the unsigned SF95 stamped as received by the "FTCA . . . Torts Branch" on December 3, 2007  (*id*. at 6-7); the envelope containing the first SF95, stamped October 4, 2007, by the Colorado Springs Post Office and stamped received by the Department of Justice on October 15 and 16, 2007 (*id*. at 8); the signed SF95 dated December 19, 2007, but without a stamp indicating its receipt (*id*. at 3-4); and the envelope allegedly containing the second, properly executed SF95 addressed to the "Director, B.O.P. Federal Torts Branch" at the Department of Justice, stamped December 27, 2007, by the Colorado Springs Post Office and stamped as received by the Department of Justice on January 17, 2008 (*id*. at 9).  Plaintiff contends the stamped envelope is enough evidence that the claim was presented and received on January 17, 2008, even though the form itself bears no stamp indicating receipt nor do the Bureau of Prisons records indicate receipt. (Docket #130 at 9-10.)

The Court finds plausible Plaintiff's rendition of the facts: he tried to correctly submit his FTCA claim once, received notice his attempt was incorrect, and then re-submitted his claim after implementing the needed correction.  Based on the conflicting factual assertions and corresponding evidence from both sides, the Court determines a triable issue on the subject of exhaustion exists, therefore dismissal of Plaintiff's tort claims on this ground is inappropriate at this stage of the litigation.  Thus, the Court proceeds to address the federal defendants' alternate assertion regarding exhaustion, that even if Plaintiff properly submitted a notice of claim, Plaintiff failed to wait the

requisite six months, or until he received a denial if sooner than six months, before filing this lawsuit.

If the Court deems Plaintiff's SF95 presented to and received by the Department of Justice on January 17, 2008, pursuant to the contentious envelope, in order to have properly exhausted administrative remedies, Plaintiff must not have instituted an action against the United States before July 17, 2008. Plaintiff *pro se* filed his initial complaint, not including any tort allegations and not naming the United States nor an entity of the United States as a defendant, on January 24, 2008. (Docket #3.) Plaintiff *pro se* filed another complaint pursuant to an order of the Court, again not including any tort allegations and not naming the United States nor an entity of the United States as a defendant, on February 7, 2008. (Docket #5.) After the Court granted his Motion to Amend on July 16, 2008, Plaintiff *pro se* filed an amended complaint on August 4, 2008, which asserted the FTCA as a jurisdictional basis, yet did not name the United States nor an entity of the United States as a defendant. (Docket #78 at 5.) On September 17, 2008, counsel entered appearance on behalf of Plaintiff. Plaintiff, now represented, filed a Third Amended Complaint on November 10, 2008, and a Fourth Amended Complaint, on November 26, 2008, both of which assert the FTCA and name the United States as a defendant. (Dockets #109, 114.)

The federal defendants contend that the date Plaintiff filed his original complaint, thereby commencing this action, governs in determining whether this action is premature, regardless whether the original complaint sought relief under the FTCA. (Docket #114 at 8.) Plaintiff argues that because Plaintiff waited until after he exhausted administrative remedies to allege claims pursuant to the FTCA in the Second Amended Complaint filed on August 4, 2008, he satisfied the requisite six-month time frame. (Docket #130 at 10.) For the following reasons, the Court agrees with Plaintiff.

Policy considerations regarding judicial efficiency and enforcement of Congressional mandates preclude "allowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint." *Duplan*, 188 F.3d at 1199. *See McNeil,* 508 U.S. at 112; *Sparrow v. USPS,* 825 F. Supp. 252, 254-55 (E.D. Cal. 1993). *But cf. Filaski v. United States,* 776 F. Supp. 115, 118 (E.D.N.Y. 1991) (granting motion to dismiss for lack of subject matter jurisdiction but allowing plaintiff to serve amended complaint "and thereby restore the action"). The *McNeil* Court plainly stated, "[e]very premature filing of an action under the FTCA imposes some burden on the judicial system . . . ." 508 U.S. at 112. The federal defendants rely on this Circuit's conclusion that, "as a general rule, a premature 'complaint cannot be cured through amendment, but instead, plaintiff must file a new suit.'" *Duplan*, 188 F.3d at 1199 (citing *Sparrow*, 825 F. Supp. at 255). *But cf. Mires v. United States*, 466 F.3d 1208, 1211-12 (10th Cir. 2006) (distinguishing *McNeil* and recognizing exceptional situations "when a district court allows an amendment by the parties to cure an exhaustion problem" (citing *Duplan*, 188 F.3d at 1199-1200)).

The Court's conclusion, as further described below, comports with the law governing exhaustion of administrative remedies, as the above cases are distinguishable from the suit at hand. For example, in *McNeil*, the plaintiff filed his complaint against the United States Public Health Service, clearly an entity of the United States, and then submitted a claim for damages purposed to exhaust administrative remedies four months later. 508 U.S. at 107-08. In *Duplan*, the Tenth Circuit recognized that the filing of an amended complaint in that matter was "properly construed as instituting a new action" because the parties previously agreed to administrative closure of action instigated by the prematurely filed complaint pending exhaustion of administrative remedies. 188 F.3d at 1200. The *Duplan* plaintiffs' initial complaint identified claims of medical negligence against medical staff at a U.S. Air Force base hospital, thereby providing notice to the government

11

of an action based on tortious conduct.  *Id.* at 1198.[3]  In *Hill v. Pugh*, the Tenth Circuit determined that even though the plaintiff in that matter did not name the FTCA or a tort claim in his first amended complaint, because he sought to submit a second amended complaint replacing one of the prior claims with an FTCA claim that was unexhausted at the time of filing, he was precluded by the *Duplan* rule, that "a premature complaint cannot be cured through amendment, but instead, plaintiff must file a new suit."  75 F. App'x 715, 717 (10th Cir. 2003) (unpublished) (citing *Duplan*, 188 F.3d 1199).  Because the *Hill* plaintiff filed the first amended complaint before exhausting administrative remedies, he was precluded from substituting an FTCA claim into the first amended complaint through a motion to amend.  *Id.*

Moreover, by analogy, the Court's conclusion comports with the Supreme Court's determinations in *Jones v. Bock* distinguishing between "claim" and "action" in the context of exhaustion of administrative remedies as required by the Prison Litigation Reform Act.  549 U.S. 199, 219-22 (2007).  The *Bock* Court noted that "statutory references to an 'action' have not typically been read to mean that every claim included in the action must meet the pertinent requirement before the 'action' may proceed."  *Id.* at 221 (citations omitted).  Similarly, although the FTCA states "an action shall not be instituted upon a claim . . . ," the Court, based on precedential interpretations of the FTCA's exhaustion requirement, does not believe the rule precluding amendment to cure a prematurely filed complaint applies when the original pleadings,

---

[3]Persuasively, in *Schneider v. Kissinger*, the U.S. District Court for the District of Columbia cited *Duplan* in finding the plaintiffs' initial complaint "advanced claims against the United States for money damages" for tortious injury, even though it did not explicitly base the claims on the FTCA.  The court noted how the initial complaint named the United States as a defendant and requested money damages for allegedly harmful orders given by former President Nixon.  310 F. Supp. 2d 251, 269-70 (D.D.C. 2004).  Thus, the court determined the plaintiffs could not proceed with the FTCA claim in the amended complaint because they did not exhaust before coming to court.  *Id.* at 270.

although instigating an action, do not include any claim giving notice to the United States, as described below.

The cited cases address instances where the originally filed complaint asserted the FTCA, tort claims generally, or claims against the United States or entity of the United States without having exhausted the requisite administrative remedies.  The Court distinguishes the case at hand from *McNeil*, *Duplan*, and other cases following the proposition that subsequently amending a complaint fails to properly cure "any jurisdictional deficiency created by the premature filing of the original complaint," because, in this case, Plaintiff's initial complaint was not premature.  *See Duplan*, 188 F.3d at 1199.  Consistent with the plain language of the statute, Plaintiff first instituted a claim against the United States when he initially asserted the FTCA as a jurisdictional basis in his Second Amended Complaint filed on August 4, 2008, after the six month period ended on July 17, 2008.  (*See* docket #78.)  Plaintiff named only individual defendants and alleged only constitutional violations in his initial pleadings, and Plaintiff previously did not name the government, nor provide any content indicating notice to the government, for example, naming an agency as a defendant, identifying tort claims or the FTCA as a basis for jurisdiction.  Therefore, the Court believes that even though Plaintiff commenced this lawsuit before his FTCA administrative remedies were exhausted, for the purposes of exhaustion, Plaintiff instituted an FTCA claim against the United States on August 4, 2008, with the filing of the Second Amended Complaint.  Thus, the Court recommends the federal defendants' first ground for dismissal be denied, and Plaintiff's Claims Seven, Eight, Nine, and Ten be allowed to proceed.

**B.**    ***Personal Jurisdiction over Defendants Watts and Nalley***

The federal defendants contend that Defendants Nalley, the Bureau of Prisons' Regional Director, and Watts, the Bureau of Prisons' National Administrator of Inmate Appeals, maintain insufficient contacts with the District of Colorado to satisfy the long-arm statute.  (Docket #115 at

11.) Plaintiff asserts that Defendants Watts and Nalley knew their decisions responding to Plaintiff's administrative requests would affect Plaintiff in Colorado, making foreseeable the possibility that "those officials will be haled into court where the effects of those decisions are felt." (Docket #130 at 12.) The federal defendants did not offer an affidavit in support of this issue, and Plaintiff refers only briefly to this issue in his declaration included with his response to the motion. (Docket #130-2 at 6.) Thus, the Court refers to Plaintiff's declaration and to the face of the Fourth Amended Complaint to reach its conclusion that the claims against Defendants Watts and Nalley should be dismissed for lack of personal jurisdiction.

In his Fourth Amended Complaint, Plaintiff alleges that Defendant Watts was personally involved in "decisions regarding Bustos' safety, deprived Bustos of certain statutory, constitutional, and common law rights." (Docket #114 at 2.) Plaintiff asserts the same regarding Defendant Nalley, in addition to describing further allegations that Defendant Nalley "has significant involvement in the policies, procedures, and specific housing decisions made at ADX." (*Id*.) More specifically, Plaintiff relates how he conducted each step of the exhaustion requirements pursuant to the Prison Litigation Reform Act, and on September 13, 2007, Defendant Nalley denied a regional remedy appeal submitted by Plaintiff to the Department of Justice on the grounds that Plaintiff "asserted no 'specific' threat to his life," and no future threat of harm existed upon transfer of Plaintiff to the step-down program. (*Id*. at 10.) On November 13, 2007, Defendant Watts denied a central office remedy appeal submitted by Plaintiff to the Department of Justice, similarly for the reason that Plaintiff "had not cited a specific threat." (*Id*.) Plaintiff contends that as a result of their involvement in handling Plaintiff's complaints, Defendants Watts and Nalley "acknowledged [Plaintiff's] concerns but advocated the only course of action" that would allegedly harm Plaintiff, in that they supported the transfer of Plaintiff to the step-down program, "with knowledge that such transfer would expose" Plaintiff to the prison gangs he feared. (*Id*. at 13, 15.) Plaintiff describes

14

such conduct on part of Defendants Watts and Nalley as "extreme and outrageous." (*Id*. at 17.)

In response to the pending Motion to Dismiss, Plaintiff recounts that another inmate informed him about regular visits by the Regional Director and a representative from Washington D.C., to "conduct control unit reviews." (Docket #130-2 at 6, ¶ 33.) In support of this contention, Plaintiff states an officer at the prison confirmed the regular institution visits. (*Id*. at 6, ¶ 34.)

In this District, courts consistently hold that "personal jurisdiction in Colorado over national and regional officials of the BOP does not arise simply because those officials have exercised supervisory responsibility over the BOP's operations in Colorado, or because an inmate has directed written complaints to the officials." *Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2008 WL 4216265, at *4-5 (D. Colo. Sept. 18, 2008) (dismissing Defendants Nalley and Watts for lack of personal jurisdiction (citing *Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state"))). *E.g., Fluker v. Federal Bureau of Prisons*, No. 07-cv-02526-CMA-CBS, 2009 WL 1065986, at *2 (D. Colo. Apr. 21, 2009) (identifying personal jurisdiction over Defendants Nalley and Watts as an inevitable issue and referring to law in this jurisdiction dismissing these defendants for lack of personal jurisdiction); *Swallow v. Baker*, No. 07-cv-02086-EWN-KMT, 2008 WL 4877014, at *5-6 (D. Colo. Aug. 27, 2008) (dismissing claims against Defendants Nalley and Watts for lack of personal jurisdiction); *Hale v. Ashcroft*, No. 06-cv-00541-REB-KLM, 2007 WL 2350150, at *3-4 (D. Colo. Aug. 15, 2007) (dismissing claims against Defendant Nalley for lack of personal jurisdiction, and declining to order service on Defendant Watts for lack of personal jurisdiction). Consistent with the precedent of this District, the Court concludes that the act of denying an administrative remedy request appeal is insufficient to establish personal jurisdiction, and Plaintiff has failed to present any additional contacts justifying such jurisdiction. Accordingly, the federal

defendants' motion in this regard should be granted, and Defendants Watts and Nalley should be dismissed from this action for lack of personal jurisdiction.

### C.      Dismissal of Plaintiff's Statutory Second Claim for Relief

In his Fourth Amended Complaint, Plaintiff brings his second claim for relief against the Bureau of Prisons ("BOP") and Defendant Wiley pursuant to Section 4042 of 18 U.S.C.[4]  (Docket #114 at 12.)  Plaintiff contends Defendants BOP and Wiley breached their Section 4042 duty to provide for Plaintiff's "safekeeping, care, and protection," and should thus be "permanently enjoined from acts" that could result in harm to Plaintiff by exposing him to certain prison gangs.  (*Id.*)

The federal defendants characterize this claim as a request for judicial review of an agency action and evaluate it pursuant to the Administrative Procedure Act.  *See* 5 U.S.C. §§ 701-06.  The federal defendants assert that Section 4042 endows broad discretion to the BOP, thereby excluding actions pursuant to this statute from judicial review.  (Docket #115 at 14-15.)  Moreover, if Plaintiff is not seeking judicial review pursuant to the APA, the federal defendants contend Plaintiff fails to identify a proper waiver of sovereign immunity allowing the claim to proceed against the BOP. (Docket #143 at 6.)

In response, Plaintiff clarifies that he does not seek judicial review of the BOP's actions pursuant to the Administrative Procedure Act.  (Docket #130 at 14.)  Plaintiff believes the Court may exercise jurisdiction over the Second Claim for Relief because "the BOP made specific

---

[4] 18 U.S.C. § 4042 provides in part:

(a) In general.--The Bureau of Prisons, under the direction of the Attorney
     General, shall--
     (1) have charge of the management and regulation of all Federal penal and
     correctional institutions;
     (2) provide suitable quarters and provide for the safekeeping, care, and
     subsistence of all persons charged with or convicted of offenses against
     the United States, or held as witnesses or otherwise;
     (3) provide for the protection, instruction, and discipline of all persons
     charged with or convicted of offenses against the United States; . . .

decisions, under specific rules of law enabled by Section 4042." (*Id.* at 16.)

The Court agrees with the federal defendants in that the Plaintiff's second claim should be dismissed, but on other grounds. Section 4042 of 18 U.S.C. establishes a statutory duty of care owed to prisoners by the United States, through the BOP and under the direction of the Attorney General. *E.g., United States v. Muniz*, 374 U.S. 150, 164-65 (1963)*; Moore v. United States*, 82 F.3d 426, 1996 WL 187545, at *1 (10th Cir. 1996) (unpublished); *Rivera v. Toft*, 477 F.2d 534, 536 (10th Cir. 1973); *Sisneros v. United States*, No. 06-cv-00311-EWN-PAC, 2007 WL 437768, at *3 (D. Colo. Feb. 6, 2007) (unreported). "Courts have made it clear that if the duty imposed by § 4042 is breached, the prisoner's remedy is an action against the United States, under the Federal Tort Claims Act." *Williams v. United States*, 405 F.2d 951, 954 (9th Cir. 1969) (citing *Muniz*, 374 U.S. at 164-66; *Cohen v. United States*, 252 F. Supp. 679 (N.D. Ga. 1966)). *See also Thomas v. U.S. Bureau of Prisons*, No. 06-cv-00063-WYD-CBS, 2007 WL 2788650, at *10-11 (D. Colo. Sept. 21, 2007). Thus, no private right of action exists pursuant solely to Section 4042, and the Court recommends the federal defendants' Motion to Dismiss in this regard be granted, and Plaintiff's Second Claim for Relief be dismissed.

### D.        Failure to State an Eighth Amendment Claim

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In the context of a case subject to the defense of qualified immunity, "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

For the purpose of introducing the claims at issue, the Court summarizes Plaintiff's First and Third Claims for Relief as against Defendants BOP, Wiley, Watts, Nalley, and Collins, for injunctive and monetary relief, resulting from alleged violations of 18 U.S.C. § 4042, the Fifth and Eighth Amendments, and prison policy. As previously stated, the Court recommends Defendants Watts and Nalley be dismissed due to lack of personal jurisdiction, and that any claims pursuant to 18 U.S.C. § 4042 be dismissed for lack of a private right of action. The federal defendants focus their argument for dismissal in this section of their motion based on failure to state a claim pursuant to solely the Eighth Amendment. Thus, the Court proceeds to evaluate Plaintiff's first and third claims as against Defendants BOP, Wiley both officially and individually, and Collins, in terms of the alleged Eighth Amendment violations only.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Prison officials must "take reasonable measures to guarantee the safety of the inmates," and "have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id*. at 832-33 (citations omitted). In order to establish a violation of the Eighth Amendment for failure to protect, the Court engages in a two-pronged analysis. First, Plaintiff must show "he is incarcerated under conditions posing a substantial risk of serious harm," which is an objective inquiry. *Id*. at 835. Second, Plaintiff must demonstrate that subjectively, the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. In a suit for injunctive relief seeking to prevent a substantial risk of serious injury from becoming actual harm, "deliberate indifference should be determined in light of the prison authorities' current attitudes and conduct." *Id*. at 846. Notably, "a prisoner is not always required to give authorities notice of a threat, [and] he is certainly not required to give notice of who precisely

is behind the threat." *Howard v. Waide*, 534 F.3d 1227, 1240 (10th Cir. 2008) (citing *Farmer*, 511 U.S. at 849 n.10).

If Plaintiff meets the objective risk and subjective knowledge elements articulated by the Supreme Court in *Farmer*, the federal defendants may still avoid liability "if they responded reasonably to the risk, even if the harm ultimately [is] not averted." *Howard*, 534 F.3d at 1239. In *Howard*, the Tenth Circuit established that "[a]n official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly [or] recklessly declined to act." *Id.* (quoting *Rodriguez v. Sec'y for the Dep't of Corr.*, 508 F.3d 611, 620 (11th Cir. 2007)). The *Howard* Court looked to a Seventh Circuit case which required that, in order to "succeed on the theory that the defendant prison officials consciously ignored the threat posed by 'gang targeting,' [a plaintiff] must demonstrate that the defendants either took no precautions to avoid a known hazard which the gang presented, or that the precautions they took ignored the risk which targeted inmates faced." *Id.* (citing *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) (because defendants failed to inform prison officials of pertinent facts indicating danger, and the prison officials transferred plaintiff to a different area of the prison in response to the notice plaintiff did provide, the court found plaintiff's case did not survive summary judgment.)).

### 1.    Plaintiff's Third Claim pursuant to the Eighth Amendment

Plaintiff's Third Claim for Relief, brought pursuant to *Bivens* and seeking monetary damages, alleges Defendants Wiley and Collins, in their individual capacities, violated Plaintiff's Eighth Amendment rights.[5]  (Docket #114 at 12.)  Plaintiff contends Defendants Wiley and Collins know of the safety issues posed by prison gangs within ADX, and that by allowing the broadcast of

---

[5]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (allowing suit for money damages against federal officers in their individual capacities who committed constitutional violations under color of federal law).

*Gangland* in the ADX, increased the risk of serious violence between rival gang members. (*Id.* at 12-13.) More specifically, Plaintiff asserts Defendants Collins and Wiley "failed to acknowledge or address [Plaintiff's] concerns regarding his safekeeping, care, and protection." (*Id.* at 13.) Plaintiff believes that, due to Defendants Collins and Wiley's knowledge of the prison gang violence in ADX in relation to the dangers particularly raised by Plaintiff in his remedy requests, "no reasonable official could believe that Defendants' conduct was lawful." (*Id.*)

The federal defendants argue that Plaintiff "fails to allege facts to meet the objective component of an Eighth Amendment 'failure to protect' claim" and also fails to allege facts meeting the subjective component. (Docket #115 at 19.) The federal defendants contend that Plaintiff "simply has not alleged that he is incarcerated under conditions that pose a substantial risk of serious harm," because he has not alleged any attack, physical harm, or fight with any inmate due to the broadcast of *Gangland* in the ADX facility. (*Id.*) In response, Plaintiff asserts that the federal defendants, instead of properly handling Plaintiff's requests for protective measures, "ignored [Plaintiff's] stated risk of harm and advocated the precise course of action, participation in the step-down unit without any protection, that would most likely lead to serious harm." (Docket #130 at 17.) Plaintiff cites to *Farmer* for the proposition that "one does not have to await the consummation of threatened injury to obtain preventative relief." (*Id.* at 18 (citing 511 U.S. at 827).)

The Court agrees with Plaintiff. The crux of Plaintiff's allegations lies in the denials of his requests "seeking protection by transfer," based on Plaintiff's assertions that he "had been confronted by and had to defend himself against other inmates under false belief, resulting from *Gangland*, of [Plaintiff's] gang affiliation." (*Id.* at 9.) Plaintiff states that he has received "threats of violence and death on several occasions from Aryan Brotherhood, DC Blacks, and Mexican Mafia gang members," and he is perceived by other inmates to be an "undercover Aryan Brotherhood enforcer," which makes him "a target for violent acts of revenge." (*Id.* at 8-9.) Considering these

20

factual allegations in the Fourth Amended Complaint as true in light of the administrative remedy denials issued by Defendants Wiley and Collins, the Court finds Plaintiff indeed states a plausible claim that his Eighth Amendment rights were violated, as further described below.

The Tenth Circuit determined that "the Eighth Amendment may be implicated not only to physical injury, but also by the infliction of psychological harm. The actual extent of any physical injury, threats or psychological injury is pertinent in proving a substantial risk of serious harm." *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001) (citing *Hudson v. McMillian*, 503 U.S. 1, 16-17 (1992) (Blackmun, J., concurring )) (reiterating the well-established law in the Tenth Circuit that labeling an inmate as a snitch satisfies the *Farmer* standard for failure to protect, even in the absence of physical injury). Thus, the Court finds Plaintiff's allegations that Aryan Brotherhood, DC Blacks, and Mexican Mafia gang members target Plaintiff with threats of "violence and death," causing Plaintiff physical damage in the form of weight loss and inability to "sleep, recreate, or bathe for anticipation and fear of attack," constitute a substantial risk of serious harm even without the occurrence of an actual physical assault, thereby satisfying the objective prong of the *Farmer* evaluation. (Docket #114 at 8, 11.)

Regarding *Farmer's* subjective prong, Plaintiff must demonstrate that subjectively, the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837. The federal defendants contend, in essence, that because Defendants Collins and Wiley responded to Plaintiff's remedy requests, such conduct fails to indicate deliberate indifference just because the responses resulted "not in the way Plaintiff desired." (Docket #115 at 20.) In the Fourth Amended Complaint, Plaintiff explains how he submitted the proper remedy forms to prison officials, requesting "protection by transfer on grounds that [Plaintiff] had been confronted by and had to defend himself against other inmates

under false belief, resulting from *Gangland*, of [Plaintiff's] gang affiliation." (Docket #114 at 9.) After submitting the first Informal Resolution Form, Plaintiff received denial of his request by Defendant Collins on the basis that Plaintiff "must first successfully complete the General Population Step Down program" pursuant to a cited prison policy. (*Id.*) In Plaintiff's second request, a Request for Administrative Remedy, the allegations in the complaint state Plaintiff "noted particular concern for violence upon transfer to the step-down program." (*Id.*) The denial of this request issued by Defendant Wiley again stated Plaintiff "must first complete the step-down program before he is eligible for transfer from ADX." (*Id.*) The following two requests and subsequent denials mirrored the previous, and also "found no future threat of harm" resulting from Plaintiff's entry into the step-down program. (*Id.* at 10.)

As previously described, the Tenth Circuit evaluated the requirement that, in order to "succeed on the theory that the defendant prison officials consciously ignored the threat posed by 'gang targeting,' [a plaintiff] must demonstrate that the defendants either took no precautions to avoid a known hazard which the gang presented, or that the precautions they took ignored the risk which targeted inmates faced." *Howard*, 534 F.3d at 1239 (citation omitted). In this matter, it appears that, as indicated by the alleged content of both the requests and denials of Plaintiff's requests for protection, the federal defendants took no precautions at all to avoid the hazard posed by the gangs making threats to Plaintiff, resulting from the broadcast of the *Gangland* episode featuring Plaintiff. Defendants Wiley and Collins actually instructed Plaintiff to proceed into the program which Plaintiff perceived produced the most threat, without any indication of taking steps to provide protection. Taking these allegations as true, the Court concludes Plaintiff's rendition of the facts presents a plausible claim that, through their attitudes and conduct, the prison officials demonstrated deliberate indifference in satisfaction of the subjective prong of the *Farmer* test.

The Court's analysis does not end here.  Plaintiff "must present evidence supporting an inference that [Defendants Wiley and Collins] actually knew about a substantial risk of serious harm to his safety." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).  Again, taking Plaintiff's factual allegations as true, Plaintiff clearly stated in the remedy request forms that he "had been confronted by and had to defend himself against other inmates under false belief, resulting from *Gangland*, of [Plaintiff's] gang affiliation."  Such information, as apparently reviewed by Defendants Wiley and Collins evidenced by their denials, plausibly demonstrates Defendants Wiley and Collins actually knew of a substantial risk of harm to Plaintiff's safety.

Plaintiff's plausible pleading of Defendants Wiley and Collins' actual knowledge furthermore satisfies the requirement of personal participation for a *Bivens* claim.  A *Bivens* action requires an allegation of personal participation, demonstrating how each defendant caused the deprivation of a federal right.  *E.g., Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise."  *See Butler v. City of Norman*, 992 F. 2d 1053, 1055 (10th Cir. 1993).  The remedy requests constitute such affirmative link, more so because of Defendants Wiley and Collins' personal presence at the facility in question as Warden and Counselor, respectively.  This is not an instance of a far-away BOP official reviewing remedy requests; violent gang dynamics in prison are no mystery to the BOP and its officials, and the Warden and Counselor of the ADX could hardly assert ignorance of the dangers posed by prison gangs generally.  *See, e.g., Johnson v. California*, 543 U.S. 499, 533-34 (2005) (distinguishing between five major prison gangs in the United States: "the Aryan Brotherhood, the Black Guerrilla Family, the Mexican Mafia, La Nuestra Familiar, and the Texas Syndicate," and recognizing that "interracial murders and assaults among inmates perpetrated by these gangs are common.").  Additionally, Plaintiff contends Defendant Wiley authorized the contentious showing of the

*Gangland* episode in question.  (Docket #114 at 3.)  Taking Plaintiff's factual allegations as true, Defendant Collins and Wiley knew of the dangers posed to Plaintiff and, again taking Plaintiff's allegations as true, apparently summarily denied Plaintiff's requests for protection as he evidently will be exposed to danger from other inmates as he progresses through the step-down program. Thus, the Court recommends the federal defendants' Motion to Dismiss in this regard be denied, and Plaintiff's Third Claim against Defendants Wiley and Collins, in their individual capacities, be allowed to proceed.

### 2.    Plaintiff's First Claim pursuant to the Eighth Amendment

Plaintiff's First Claim for Relief asserts Defendants BOP and Wiley, in his official capacity as the Warden at ADX, violated Plaintiff's rights under the Fifth and Eighth Amendments.  (Docket #114.)  In his first claim, Plaintiff seeks the Court to enjoin Defendants BOP and Wiley "from acts that may result in [Plaintiff's] exposure to the Aryan Brotherhood, Mexican Mafia, DC Blacks, or any suspected members or associates of these gangs."  (*Id.* at 12.)  Namely, Plaintiff believes that Defendants BOP and Wiley "know" about *Gangland* and the general relations of prison gangs at the ADX, and thus should "reasonably infer" that Plaintiff faces a "substantial risk of serious harm or death" if exposed to gang members from the Aryan Brotherhood, Mexican Mafia, or DC Blacks. (*Id.*)

In their reply, the federal defendants raise the issue of subject matter jurisdiction over Plaintiff's claims against the BOP and Defendant Wiley in his official capacity, without a proper waiver of sovereign immunity.  (Docket #143 at 6, 9.)  "Any federal court must, *sua sponte*, satisfy itself of its power to adjudicate in every case and at every stage of the proceeding . . . ."  *Harris v. Illinois-Cali. Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982).  The Court construes a claim for injunctive relief against an agency of the United States, such as the BOP, or against an entity official in her or his official capacity, to be against the United States itself.  *See, e.g., Kentucky*, 473 U.S.

24

at 165 ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) (stating federal agencies, like the United States as sovereign, are "shielded by sovereign immunity" (citation omitted)); *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989) ("when an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." (citations omitted)).  Plaintiff has not identified a waiver of sovereign immunity as applied to his First Claim, thus, the Court recommends Plaintiff's First Claim be dismissed without prejudice with leave to re-file against the United States, consistent with the Court's evaluation below.

The Tenth Circuit concluded that Section 702 of 5 U.S.C. allows a "general waiver of the government's sovereign immunity from injunctive relief." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (citation omitted) (holding sovereign immunity did not bar a federal prisoner's claim against prison dentists in their official capacities for injunctive relief in the form of dental care). *See also Green v. Federal Bureau of Prisons*, No. 07-cv-1011-DME-MEH, 2009 WL 150650, at *2 (D. Colo. Jan. 21, 2009).  However, sovereign immunity generally prohibits injunctions requiring affirmative actions by a federal actor.  Although Plaintiff's First Claim for Relief characterizes the sought relief as an injunction prohibiting acts that may result in Plaintiff's exposure to the gangs in question, such prohibition in turn would require affirmative action to protect Plaintiff.  The Supreme Court recognized two exceptions to the general rule prohibiting injunctions requiring affirmative acts, "permitting suits for prospective relief when government officials act beyond the limits of statutory authority or when the statute from which government officials derive their authority is itself unconstitutional." *Simmat*, 413 F.3d at 1232-33 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690 (1949)).

As stated, in evaluating a claim for injunctive relief seeking to prevent a substantial risk of serious injury from becoming actual harm, "deliberate indifference should be determined in light of the prison authorities' current attitudes and conduct." *Farmer*, 511 U.S. at 846. The Court previously concluded Plaintiff states a plausible claim that the conduct of Defendants Wiley and Collins violated his Eighth Amendment right to be free from violence at the hands of other prisoners. In light of the cited prison policies as designated in Plaintiff's First Claim for Relief and the Court's prior determination of Plaintiff's *Bivens* claim, the Court also recognizes a plausible claim that the United States, through the BOP and Defendant Wiley in his official capacity, violated Plaintiff's Eighth Amendment rights. Arguably, accepting Plaintiff's allegations as true, denying requests for protection from an inmate who, falsely featured as a member of the Aryan Brotherhood in a television show broadcast to the ADX population, received threats from other gang members constitutes failure to protect pursuant to the Eighth Amendment. Thus, the Court recommends the federal defendants' Motion to Dismiss be granted as it applies to Plaintiff's First Claim for Relief pursuant to the Eighth Amendment, but that Plaintiff's First Claim be denied without prejudice with leave to properly re-file against the United States.

The Supreme Court articulated in *Farmer* that "[h]aving incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." 511 U.S. at 833. For the reasons stated above, the Court finds Plaintiff's rendition of the factual allegations in his Fourth Amended Complaint presents a plausible violation of his Eighth Amendment right to be protected from violence imposed by other inmates, even if such violence has yet to progress from threat to action. Thus, the Court recommends the federal defendants' Motion to Dismiss based on failure to state an Eighth Amendment claim be granted in part and denied in part as stated herein.

### E.    *Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from individual liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> In evaluating a claim for qualified immunity, the court must first determine whether, considered in the light most favorable to the plaintiff, the facts alleged state the violation of a [statutory or] constitutional right. . . . If so, the court must go on to determine whether the [statutory or] constitutional right was clearly established at the time of injury. . . . If the answer to either of these questions is no, the defendant is entitled to qualified immunity.

*PETA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1207 (10th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).  Although the Supreme Court recently held that "the *Saucier* protocol should not be regarded as mandatory in all cases, [the Supreme Court] continue[s] to recognize it as often beneficial." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  Accordingly, the Court proceeds to evaluate whether Plaintiff has plausibly demonstrated that Defendants Wiley and Collins, in their individual capacities, violated a constitutional or statutory right and that such right was clearly established at the time of Defendants Wiley and Collins' conduct.

As previously stated, the Court indeed concludes that Plaintiff states a plausible claim that Defendants Wiley and Collins violated his Eighth Amendment right to be free from violence at the hands of other prisoners, in light of the substantial risk of harm faced by Plaintiff at the ADX. Furthermore, the Supreme Court solidified the existence and intricacies of such right in *Farmer v. Brennan*, decided in 1994.  511 U.S. 825 (1994).  The facts giving rise to the claims at hand commenced in June 2007, well after *Farmer*.  Thus, the Court recommends the federal defendants' Motion to Dismiss be denied insofar as it asserts qualified immunity on behalf of Defendants Wiley and Collins.

**IV.     Conclusion**

Accordingly, the Court **RECOMMENDS** the Federal Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6) [filed December 19, 2008; docket #115] be **GRANTED IN PART** and **DENIED IN PART** as follows:

Plaintiff's First Claim for Relief be dismissed without prejudice with leave to re-file against the United States consistent with the Court's recommendation;

Plaintiff's Second Claim for Relief be dismissed;

Plaintiff's Third Claim for Relief be dismissed as to Defendants Watts and Nalley and as to 18 § U.S.C. 4042, and be allowed to proceed as to Defendants Wiley and Collins; and

Plaintiff's Seventh, Eighth, Ninth, and Tenth Claims for Relief be allowed to proceed.

Dated at Denver, Colorado, this 22nd day of June, 2009.

BY THE COURT:


 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge