IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00153-LTB-MEH

JERRY LEE BUSTOS,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
BUREAU OF PRISONS,
HARRELL WATTS, individually and as Administrator, Federal Bureau of Prisons,
MICHAEL K. NALLEY, individually and as Regional Director, Bureau of Prisons,
R. WILEY, individually and as Warden, U.S.P. Admin. Max.,
COLLINS, individually and as Unit Manager, U.S.P. Admin. Max.,
JOHN DOE #1, individually and officially,
JOHN DOE #2, individually and officially,
JOHN DOE #3, individually and officially, and
A&E TELEVISION NETWORKS,

    Defendants.

## RECOMMENDATION ON DEFENDANT AETN'S MOTION TO DISMISS CLAIMS 15 AND 16 PURSUANT TO FED. R. CIV. P. 12(b)(6)

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendant AETN's Motion to Dismiss Claims 15 and 16 Pursuant to Fed. R. Civ. P. 12(b)(6) [filed December 19, 2008; docket #117]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation. (Docket #122.) The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons set forth below, the Court **RECOMMENDS** that Defendant AETN's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.[1]

---

[1]Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

**I.     Background**

Plaintiff is an inmate at the United States Penitentiary, Administrative Maximum ("ADX") facility in Florence, Colorado. Plaintiff initiated this action *pro se* on January 24, 2008. After counsel entered their appearance on behalf of Plaintiff, the Court allowed Plaintiff to submit a Fourth Amended Complaint on November 26, 2008, which is the operative pleading in this matter. (Docket #114.) Plaintiff brings suit against the federal defendants for injunctive relief and money damages, alleging violations of the Fourth, Fifth, and Eighth Amendments of the Constitution, 18 U.S.C. § 4042, existing prison policy, and various tort claims brought pursuant to the Federal Tort Claims Act ("FTCA"). (*See id*.) Plaintiff sues A&E Television Networks (also referred to as "AETN" or "A&E") for money damages, alleging tort claims including invasion of privacy, defamation and conspiracy. (*Id.*)

The facts giving rise to Plaintiff's claims extend back to November 1998, when ADX cameras recorded a fight occurring between an African-American inmate and Plaintiff, who is Mexican-American. (*Id*. at 7.) Plaintiff represents to the Court that the fight was not gang-related, and Plaintiff "was not, and is not, a member of any gang." (*Id*.) Almost nine years later, Plaintiff learned that Defendant A&E had broadcast the prison recording as part of a series titled "*Gangland*," and his identity in the video could be clearly viewed. Plaintiff contends *Gangland* "depicts

---

assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[Plaintiff] as an Aryan Brotherhood member and shows [him] carrying out violent acts on behalf of the Aryan Brotherhood." (*Id*.)

Plaintiff alleges the *Gangland* episode featuring Plaintiff as "an Aryan Brotherhood member" was broadcast to the public and to the ADX prison population on a weekly basis for approximately six months. (*Id*. at 2, 8.) Plaintiff contends that, "[a]s a direct result of *Gangland*, [Plaintiff] received threats of violence and death on several occasions from Aryan Brotherhood, DC Blacks, and Mexican Mafia gang members." (*Id*. at 9.) Plaintiff asserts he is now perceived as "an undercover Aryan Brotherhood enforcer" which makes him a "target for violent acts of revenge." (*Id*. at 9.)

Plaintiff represents that he requested Defendant A&E, who owns the copyright to *Gangland*, to cease showing the pertinent episode because of its "factually incorrect" nature. A&E did not respond to Plaintiff's letter, dated October 3, 2007, nor did it stop broadcasting *Gangland*. (*Id*. at 8.) Plaintiff also describes his requests for protection submitted to the Bureau of Prisons ("BOP") through the administrative remedies process, asking to be transferred out of ADX and not to the ADX's "General Population Step Down program," where he could be subjected to violence due to the misperception of his affiliation with the Aryan Brotherhood, as depicted in *Gangland*. (*Id*. at 9-11 (explaining Plaintiff submitted an Informal Resolution Form on July 2, 2007; a Request for Administrative Remedy on July 9, 2007; a Regional Administrative Remedy Appeal on August 9, 2007; and a Central Office Administrative Remedy Appeal on September 28, 2007).) Plaintiff contends the BOP denied each request on the ground that procedurally, Plaintiff must complete the General Population Step Down program before he could be transferred from the ADX. (*Id*.) On November 13, 2007, the BOP transferred Plaintiff from G-Unit to the step-down program in J-Unit within ADX, which is where Plaintiff currently resides. (*Id.* at 9-10.) Presently, Plaintiff states

3

there are no Aryan Brotherhood, DC Blacks, or Mexican Mafia gang members in his section of the J-Unit. (*Id*. at 9.) However, Plaintiff asserts that as he "continues to progress through the step-down program, he will be exposed to Aryan Brotherhood, Mexican Mafia, or DC Blacks gang members directly and on a daily basis." (*Id*. at 11.)  Plaintiff alleges that, as a result of the Defendants' actions leading to the broadcast of *Gangland*, the repetitive showings of the *Gangland* episode showing the recording involving Plaintiff, and the subsequent threats from other inmates, he "has lost a significant amount of weight, and has consistently been unable to sleep, recreate, or bathe for anticipation and fear of attack." (*Id.*)

Both A&E and the federal defendants responded to Plaintiff's Fourth Amended Complaint with Motions to Dismiss. (*See* Dockets #115, 117.)  Defendant A&E seeks the Court to dismiss Plaintiff's Fifteenth and Sixteenth Claims for Relief pursuant to Fed. R. Civ. P. 12(b)(6). (Docket #117 at 7.)  In its Motion to Dismiss, Defendant A&E asserts Plaintiff cannot satisfy the legal elements of an intrusion claim in Colorado, and that the First Amendment precludes Plaintiff's appropriation claim.

**II.    Standard of Review**

   *A.    Effect of Exhibits on Defendant A&E's Motion to Dismiss*

First, the Court addresses whether Defendant A&E's Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) should be converted to either a Motion for Summary Judgment or a Motion for Judgment on the Pleadings pursuant to Rule 12(c), as argued by Plaintiff. (Docket #133 at 3-4.)  "Courts have broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland, Okla*., 143 F.3d 1378, 1381 (10th Cir. 1998). Fed. R. Civ. P. 12(d) requires that, on a motion brought pursuant to Rule 12(b)(6) or 12(c), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for

summary judgment under Rule 56." Unless dismissal can be justified without considering the outside materials, the failure to follow Rule 12(d)'s mandate may result in reversible error. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1216 (10th Cir. 2007). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (citations omitted). *See also Alvarado*, 493 F.3d at 1215 (stating the same).

Defendant A&E included four attachments with its motion. The first three are opinions from other districts, and the last is a conventionally submitted recording of the *Gangland* episode at issue in this matter. (*See* dockets #117-2, 117-3, 117-4, 117-5.) In response, Plaintiff contends the inclusion of the *Gangland* episode converts A&E's Motion to Dismiss to a Motion for Summary Judgment, as Plaintiff believes "a videotape submitted as an exhibit is a matter outside the pleading." (Docket #133 at 3 (citing *In re Medical Lab. Mgmt. Consultants*, 931 F. Supp. 1487, 1491 (D. Ariz. 1996)).) Plaintiff thus included five exhibits with his response: an additional declaration by Plaintiff, an ADX surveillance video, a letter from counsel for the federal defendants in this matter verifying the surveillance video, a declaration by Plaintiff's counsel also verifying the surveillance video, and a series of correspondence between Plaintiff and prison officials regarding Plaintiff's request for a copy of the surveillance video. (*See* dockets #133-2, 133-3, 133-4, 133-5, 133-6.) In reply, Defendant A&E contends that its submission of the *Gangland* episode does not warrant converting its motion to a Motion for Summary Judgment pursuant to *GFF Corp. v. Associated Wholesale Grocers, Inc.*, and the Court may not properly review the materials included by Plaintiff in adjudicating the motion. (Docket #146 at 7, 17 (citing 130 F.3d at 1384-85; *In re Qwest*

*Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004)).) In addition to its reply, Defendant A&E filed eight copies of opinions and two exhibits: a transcript of proceedings in a criminal case from the Central District of California and a copy of an order in Plaintiff's criminal proceeding before the Western District of Texas in 2007. (*See* dockets #146-2, 146-3, 146-4, 146-5, 146-6, 146-7, 146-8, 146-9, 146-10, 146-11.)

The Court perceives two conclusions regarding the inclusion of these described materials to Defendant A&E's Motion to Dismiss, Plaintiff's subsequent response, and A&E's reply in support. First, the Court agrees with Defendant A&E that the law in this Circuit allows the Court to look to an "indisputably authentic copy" of a "document referred to in the complaint and central to the plaintiff's claim." However, second, the Court sees no need to view the episode of *Gangland* at issue in order to determine whether Plaintiff's Fourth Amended Complaint states plausible claims for relief pursuant to Fed. R. Civ. P. 12(b)(6). Thus, the Court evaluates only the allegations in the Fourth Amended Complaint and excludes all of the filed exhibits by both parties as related to the briefing of Defendant A&E's Motion to Dismiss. For the purposes of this recommendation, the Court declines to convert the motion from a 12(b)(6) Motion to Dismiss to a Motion for Summary Judgment or a Motion for Judgment on the Pleadings.[2]

### B.     *Dismissal under Fed. R. Civ. P. 12(b)(6)*

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the well-pleaded factual allegations of the complaint as true and must construe them in the light

---

[2]"Judgment on the pleadings under Rule 12(c) is a drastic remedy that courts should otherwise use sparingly." *Aberkalns v. Blake*, No. 08-cv-01080-CMA-KMT, 2009 WL 1392070, at *2 (D. Colo. May 15, 2009) (citing *Power Motive Corp. v. Mannesmann Demag Corp.*, 617 F. Supp. 1048, 1049 (D. Colo. 1985)). The same standard of review applies to motions brought under 12(c) as under 12(b)(6). *See Aberkalns*, 2009 WL 1392070, at *2. At this stage of the litigation and after review of the pleadings at hand, the Court concludes conversion to a 12(c) motion is unnecessary and proceeds to evaluate Defendant A&E's motion pursuant to 12(b)(6) as titled.

most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560-62 (2007). Courts should look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief -- that is -- a complaint must include "enough facts to state a claim for relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *Alvarado*, 493 F.3d at 1215. Plausibility means that "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). The complaint must sufficiently allege facts supporting all of the elements necessary to establish an entitlement to relief under the legal theory proposed. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (citation omitted). As the Tenth Circuit explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

**III.    Analysis**

Plaintiff bases his claims against Defendant A&E on the common law of Colorado and contends the Court may properly review these claims pursuant to 28 § U.S.C. 1332(a), which governs diversity jurisdiction. (Docket #114 at 6.) "When exercising jurisdiction over pendent state claims, [the Court] must apply the substantive law of the forum state ... just as [ ] if [ ] jurisdiction rested on diversity of citizenship." *Lytle v. City of Haysville,* 138 F.3d 857, 868 (10th Cir. 1998). Therefore, the Court applies Colorado law in this recommendation.

Colorado law recognizes three separate categories of invasion of privacy claims: (1) unreasonable intrusion up on the seclusion of another ("intrusion"); (2) publicity that unreasonably

places another in a false light before the public ("disclosure"); and (3) appropriation of another's name or likeness ("appropriation")." *Quigley v. Rosenthal*, 327 F.3d 1044, 1073 (10th Cir. 2003). Plaintiff titled his Fifteenth Claim for Relief as a claim for Invasion of Privacy by Intrusion against Defendant A&E and his Sixteenth Claim for Relief as a claim for Invasion of Privacy by Appropriation against Defendant A&E. (Docket #114 at 19-20.) As later discussed, Plaintiff attempts to modify his Fifteenth Claim to instead constitute a claim for Public Disclosure of Private Facts. For the reasons stated below, the Court recommends Defendant A&E's Motion to Dismiss be granted in part and denied in part in that Plaintiff's Fifteenth Claim for Relief should be dismissed, and Plaintiff's Sixteenth Claim for Relief should be permitted to proceed.

### *A.     Plaintiff's Fifteenth Claim: Invasion of Privacy by Intrusion*

The privacy tort of intrusion "focuses on the manner in which information that a person has kept private has been obtained." *Quigley*, 327 F. 3d at 1073 (quoting *Doe v. High-Tech Inst., Inc.*, 972 P.2d 1060, 1065 (Colo. Ct. App. 1998)). To state a plausible claim of intrusion as pled, Plaintiff must demonstrate that Defendant A&E "has intentionally intruded, physically or otherwise, upon [Plaintiff's] seclusion or solitude, and such intrusion would be considered offensive by a reasonable person." *Id*.

Plaintiff contends conclusively that, without his permission, "A&E intentionally invaded [Plaintiff's] privacy by airing" a video recording of the prison yard at the ADX facility showing a fight between Plaintiff and another inmate. (Docket #114 at 19.) Plaintiff states this alleged invasion of privacy is very offensive to a reasonable person "considering the degree of the invasion, the circumstances surrounding the intrusion and the manner in which it occurred," in light of "A&E's motives and objectives." (*Id*. at 20.) Plaintiff makes no reference to how Defendant A&E obtained the video, but states generally that "cameras recorded ADX inmate Moore, an African-

8

American, attacking [Plaintiff]." (*Id*. at 7.)

Defendant A&E asserts that Plaintiff enjoys no reasonable expectation of privacy "while being surveilled in a super-maximum security prison recreation yard." (Docket #117 at 11.) Moreover, Defendant A&E believes that even if Plaintiff retained a reasonable expectation of privacy, Defendant A&E was not the liable entity who intruded upon such privacy. (*Id*. at 14.) For the following reasons, the Court agrees with Defendant A&E and concludes that Plaintiff fails to state a plausible claim of intrusion.

In *Quigley*, the Tenth Circuit concluded that the defendants' subsequent "use" of telephone conversations conducted by plaintiffs and intercepted by a third party, in that case the plaintiffs' neighbor, did not constitute intrusion on the plaintiffs' seclusion or solitude. 327 F. 3d at 1073. The *Quigley* Court stated, "once the interception of the conversations was complete, any subsequent 'use' of the conversations could not have resulted in any additional intrusion on [plaintiffs'] seclusion or solitude." *Id*. The court noted that such use could have resulted in the violation of a different privacy tort, but not intrusion. *Id*.

Similarly, Defendant A&E states that the Fourth Amended Complaint makes no allegation of A&E's involvement in the initial "intrusion," namely, the recording of the fight. (Docket #117 at 14.) In fact, Plaintiff does not contend A&E's direct involvement with the recording until his description of the John Doe defendants' supposed action of transferring "possession of the Video to A&E . . . for their own purposes, profit, or benefit." (*Id*. at 18.) Thus, consistent with *Quigley*, the Court finds that Defendant A&E's subsequent use of the surveillance video does not constitute intrusion on Plaintiff's seclusion or solitude, even if such seclusion or solitude presents a legally cognizable expectation of privacy. Therefore, even when taking the factual allegations in his Fourth Amended Complaint as true, Plaintiff fails to state a plausible claim for invasion of privacy by

9

intrusion because he does not establish Defendant A&E as the intruder.[3]  The Court recommends Defendant A&E's Motion to Dismiss be granted in this regard and Plaintiff's Fifteenth Claim for Relief be dismissed.

    **B.**  *Plaintiff's Alternate Fifteenth Claim: Invasion of Privacy by Public Disclosure of Private Facts*

Despite the potential for procedural issues with Plaintiff's request for the Court to construe his Fifteenth Claim for Relief as a claim for Invasion of Privacy by Public Disclosure of Private Facts, the Court determines Plaintiff also fails to state a plausible claim of the privacy tort of public disclosure.[4]  As determined by the Colorado Supreme Court,

> [T]o prevail on a claim for unreasonable disclosure of private facts, a plaintiff must establish that: (1) the fact disclosed was private in nature; (2) the disclosure was made to the public; (3) the disclosure was one which would be highly offensive to a reasonable person; (4) the disclosed fact was not of legitimate concern to the public; and (5) the one who disclosed the fact did so with reckless disregard of the private nature of the fact disclosed.

*High-Tech Inst., Inc.*, 972 P.2d at 1065 (citation omitted).

Defendant A&E believes that Plaintiff cannot establish that the facts disclosed in the *Gangland* episode constitute "private facts" and, even if the facts are private, such disclosure would not be "highly offensive to a reasonable person." (Docket #117 at 14 n.3.)  In response, Plaintiff contends that the fact of Plaintiff's membership in the Aryan Brotherhood, "though untrue," was a

---

[3]Because Plaintiff fails to allege facts leading to a plausible conclusion of Defendant A&E's liability for intrusion, and as Plaintiff himself seeks to recharacterize his Fifteenth Claim, the Court refrains from further analysis of whether Plaintiff retains a reasonable expectation of privacy under the circumstances of this matter.  Notably, however, the Court finds rather persuasive the litany of cases rejecting lawsuits for intrusion brought by prisoners, as presented by Defendant A&E.  (*See* docket #117 at 12-13.)

[4]Plaintiff argues that the Court should do so pursuant to the pleadings' substance, and not the title.  (Docket #133 at 5-6.)  For the sake of judicial efficiency and thoroughness of this recommendation, the Court proceeds to evaluate Plaintiff's Fifteenth Claim as if it were a claim for disclosure, and, as stated, finds Plaintiff fails to state a plausible claim for both intrusion and disclosure.

private fact, disclosure of this fact to the public through the *Gangland* broadcast would be very offensive to a reasonable person, Defendant A&E knew or should have known that such fact is private, and privilege does not protect A&E from liability because the disclosed private fact is both false and not reasonably related to a matter of public concern. (Docket #133 at 6.) In its reply, Defendant A&E raises the issue that only truthful statements are actionable under a claim for public disclosure of private facts. (Docket #146 at 9.) For the following reasons, the Court again agrees with Defendant A&E.

The Restatement (Second) of Torts describes the tort of "Publicity Given to Private Life" as "tort liability involving a judgment for damages for publicity given to ***true statements of fact***." Restatement (Second) of Torts § 652D (2009) (emphasis added). The case which recognized a tort claim for invasion of privacy by public disclosure of private facts in Colorado involved a plaintiff bringing suit for disclosure of the true facts of his homosexuality and exposure to the AIDS virus. *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 379 (Colo. 1997). The Tenth Circuit evaluated a case for public disclosure of private facts where the plaintiff sued for the publishing of "her photograph, name, and private facts about her psychiatric history and martial life," which were also true. *Gilbert v. Medical Economics Co.*, 665 F. 2d 305, 308-09 (10th Cir. 1981). *See also Rosenberger v. Catholic Health Initiatives, Colo.*, No. Civ. A. 03CV2412WDMMPA, 2005 WL 1994239, at *4 (D. Colo. Aug. 15, 2005) (evaluating a claim for public disclosure of private facts where facts disclosed were true accounts of plaintiff having suffered a seizure and being treated for such at an emergency room). Furthermore, the plain language of the required elements to prove public disclosure of private facts implicates the truth of such disclosure, in that a "fact" generally refers to a statement of truth. *See* Black's Law Dictionary (8th ed. 2004) (defining "fact" as "something that actually exists; an aspect of reality") (West 2009).

Throughout Plaintiff's Fourth Amended Complaint, Plaintiff emphasizes the "fact" that he is not, and was not, a member of any gang, let alone a member of the Aryan Brotherhood. (*See* docket #114 at 7, 19.) Thus, a claim for public disclosure of private facts against Defendant A&E fails on the basis that, as stated by Plaintiff, his "status as an Aryan Brotherhood or undercover Aryan Brotherhood member, ***though untrue***, was a private fact." (Docket #133 at 6 (emphasis added).) Plaintiff's claim for public disclosure of private facts, premised on the disclosure of information that is allegedly false, does not satisfy the requisite elements of the claim and in essence, duplicates Plaintiff's Fourteenth Claim alleging defamation by Defendant A&E. Therefore, the Court recommends dismissal in full of Plaintiff's Fifteenth Claim for Relief, both as titled and as construed by Plaintiff.

### C.  *Plaintiff's Sixteenth Claim: Invasion of Privacy by Appropriation*

Plaintiff alleges that, through the improper use of his likeness and identity in *Gangland* for its own "purposes, profit, or benefit," Defendant A&E caused injury and damage to Plaintiff. (Docket #114 at 20.) Defendant A&E requests the Court to dismiss Plaintiff's appropriation claim because it believes the *Gangland* episode constitutes a documentary and is therefore "privileged under the First Amendment." (Docket #117 at 15.) Whether speech is constitutionally protected is a question of law. *Joe Dickerson & Assoc., LLC v. Dittmar*, 34 P.3d 995, 1003 (Colo. 2001) (establishing elements of a claim for appropriation in Colorado).

The First Amendment privilege, as applied to a claim of appropriation, "permits the use of a plaintiff's name or likeness when that use is made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern." *Dittmar*, 34 P.3d at 1003. The Colorado Supreme Court dictated that "courts must determine whether the character of the publication is primarily noncommercial, in which case the privilege will apply, or

primarily commercial, in which case the privilege will not apply." *Id.* Such evaluation is "ordinarily decided as a question of law." *Id.* (citations omitted). As described by the *Dittmar* Court, "[c]ommercial speech is speech that proposes a commercial transaction . . . It is the content of the speech, not the motivation of the speaker, which determines whether particular speech is commercial." *Id.* at 1004 (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422-23 (1993)). A determination of the publication as primarily commercial may still invoke the protection "if it concerns a legitimate matter of public concern." *Id.* at 1003 (citation omitted).

In his Fourth Amended Complaint, Plaintiff contends "*Gangland* generated or generates revenue for A&E," A&E's alleged appropriation manifested in the broadcast of *Gangland*, DVD sales of *Gangland*, and the *Gangland* marketing campaign, and such appropriation was for "A&E's own purposes, profit, or benefit." (Docket #114 at 20.) Even if the Court concludes *Gangland* is primarily commercial as requested by Plaintiff, a primarily commercial publication may still be protected by the First Amendment if such publication concerns a "legitimate matter of public concern." As stated below, the Court finds *Gangland* indeed presents information of legitimate public concern; however, the Court believes the alleged appropriation in this matter is not reasonably related to the matter of public concern focused on by *Gangland*.

As determined by the *Dittmar* Court, a primarily commercial publication may be protected by the First Amendment if the content of such publication "concerns a legitimate matter of public concern." 34 P.3d at 1003. The Tenth Circuit evaluates whether a publication implicates the newsworthiness privilege in terms of whether the "material *as a whole* is substantially relevant to a legitimate matter of public concern." *Anderson v. Suiters*, 499 F.3d 1228, 1236 (10th Cir. 2007) (citing *Alvarado*, 493 F.3d at 1221) (looking to the Restatement (Second) of Torts and other Circuit cases as persuasive authority) (emphasis added). The Restatement (Second) of Torts states, "[t]he

13

scope of a matter of legitimate concern to the public . . . extends also to . . . information to the public for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published." Restatement (Second) of Torts § 652D, comment j (2009). In evaluating *Gangland* as a whole, as described by the parties in their pleadings and excluding any attached exhibits, the Court finds the content of the *Gangland* episode in question implicates a legitimate subject of public interest.

In his response, Plaintiff states his perception that the *Gangland* episode is "a documentary about the Aryan Brotherhood." (Docket #133 at 17.) In its reply, Defendant A&E characterizes *Gangland* as "a documentary focusing on the impact on the lives and safety of federal prisoners … as a whole … of a violent racist prison gang (even if the documentary were focused exclusively on one such gang) … ." (Docket #146 at 18.) The Court believes both characterizations constitute a legitimate matter of public interest. The public certainly retains interest in how its tax dollars are spent through the maintenance of safety and order within the federal prison system, and the public certainly has interest in the flow of prisoners, both in and out of prison, who are exposed to notorious groups like the Aryan Brotherhood.

The plain language of the test for the application of the First Amendment privilege "permits the use of a plaintiff's name or likeness when that use is made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern." *Dittmar*, 34 P.3d at 1003. The Court believes the use of Plaintiff's likeness in the surveillance video is in the context of a publication concerning a matter of legitimate public concern, but is not reasonably related to the matter of public concern. Accepting Plaintiff's factual allegations as true, the recording used by Defendant A&E is of Plaintiff, who is Mexican-American, being attacked by another inmate who is African-American. (Docket #114 at 7.) Plaintiff states, "[t]he fight was not

14

gang-related, and Plaintiff was not, and is not, a member of any gang." (*Id.*) Considering the matter of legitimate public concern as Defendant A&E or Plaintiff describes it, that is, as the impact of a violent racist prison gang on the "lives and safety of federal prisoners" or as solely the Aryan Brotherhood within the prison system, the Court does not see how a non-gang-related fight between a Mexican-American and African-American inmate reasonably relates to a documentary about a violent racist prison gang or the Aryan Brotherhood generally. The Court declines to recognize an assumption that a fight between inmates of different heritage could reasonably be described as a racist prison gang fight. Thus, the Court concludes Defendant A&E may not properly assert the First Amendment privilege as a defense to Plaintiff's appropriation claim at this stage of the proceedings and recommends Defendant A&E's Motion to Dismiss be denied in regard to Plaintiff's Sixteenth Claim for Relief.

**IV.  Conclusion**

Accordingly, for the reasons stated herein, the Court RECOMMENDS Defendant AETN's Motion to Dismiss Claims 15 and 16 Pursuant to Fed. R. Civ. P. 12(b)(6) [filed December 19, 2008; docket #117] be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Fifteenth Claim for Relief should be dismissed, and Plaintiff's Sixteenth Claim for Relief should be permitted to proceed.

Dated at Denver, Colorado, this 26th day of June, 2009.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge