**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Action No. 08-cv-00153-LTB-MEH

JERRY LEE BUSTOS,

        Plaintiff,

v.

UNITED STATES OF AMERICA;
BUREAU OF PRISONS;
HARRELL WATTS, individually and as Administrator, Federal Bureau of Prisons;
MICHAEL K. NALLEY, individually and as Regional Director, bureau of Prisons;
R. WILEY, individually and as Warden, U.S.P. Admin. Max.;
COLLINS, individually and as Unit Manager, U.S.P. Admin. Max.;
JOHN DOE # 1, individually and officially;
JOHN DOE # 2, individually and officially;
JOHN DOE # 3, individually and officially; and
A&E TELEVISION NETWORKS;

        Defendants.

_____

**ORDER**
_____

        This matter is before me on Defendant, A&E Television Networks' ("AETN") Objections to the Recommendation of the Magistrate Judge on Defendant AETN's Motion to Dismiss Claims 15 and 16 Pursuant to FED. R. CIV. P. 12(b)(6) [**Docket # 168**] and Plaintiff's Response [**Docket # 175**]. Pursuant to 28 U.S.C. § 636(b)(1), I conducted *de novo* review of the facts, law, and objections to the recommendation. The motion and objections are adequately briefed and oral argument would not materially aid their resolution. For the reasons set forth below, I approve and adopt the Magistrate Judge's recommendation in part and disapprove it in part.

## I.  BACKGROUND FACTS

The relevant facts alleged in the Fourth Amended Complaint [**Docket # 114**] are as follows.  Plaintiff is an inmate at the Federal Administrative Maximum penitentiary ("ADX").  Approximately ten years ago, ADX cameras videotaped an attack on Plaintiff by a fellow inmate.  The videotape was made available to the History Channel—a cable television channel owned, operated, controlled, and directed by AETN—which later used the video in a television program entitled: *Gangland: Aryan Brotherhood*.  The narrator of the television program falsely described Plaintiff—who is Mexican-American—as the instigator of the attack and as a member of the Aryan Brotherhood prison gang.  The *Gangland* program was broadcast to the ADX prison population weekly for approximately six months.  Some prisoners now incorrectly believe Plaintiff to be an undercover member of the Aryan Brotherhood.  These prisoners—which include members of the Aryan Brotherhood, as well as members of rival gang the DC Blacks and ally gang the Mexican Mafia—have threatened Plaintiff with serious physical injury and death based upon their beliefs.  Because Plaintiff anticipates or fears attack, he has lost weight, and has been unable to sleep, recreate, or bathe.

Plaintiff brought claims against AETN in his Fourth Amended Complaint [**Docket # 114**] including Defamation (Fourteenth Claim for Relief); Invasion of Privacy by Intrusion (Fifteenth Claim for Relief); Invasion of Privacy by Appropriation (Sixteenth Claim for Relief); and Conspiracy (Seventeenth Claim for Relief).  AETN moved to dismiss Plaintiff's Fifteenth and Sixteenth Claims for Relief under Rule 12(b)(6) [**Docket # 117**].

I referred AETN's motion to the Magistrate Judge for recommendations.  On June 22, 2009, the Magistrate Judge recommended the Fifteenth Claim for Relief be dismissed, and

further recommended the Sixteenth Claim for Relief be allowed to proceed. [**Docket # 164**].  On *de novo* review, I conclude that the Magistrate Judge's recommendation is correct as to dismissal of the Fifteenth Claim for Relief.  As to Plaintiff's Sixteenth Claim for Relief, I conclude, as a matter of law, that AETN's use of Plaintiff's image is protected by the First Amendment and Colorado law.  Accordingly, Plaintiff's Sixteenth Claim for Relief should be dismissed.

## II.  STANDARD OF REVIEW

Granting a motion to dismiss is a harsh remedy which must be exercised with caution to protect the liberal rules of pleading and the interests of justice.  *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989).  Thus, the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.  *Id*.  Nonetheless, a claim "may be dismissed either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim."  *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, a district court must accept as true all factual allegations in the complaint.  *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  Legal conclusions—while they "can provide the framework of a complaint"—must therefore "be supported by factual allegations."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id* at 1949–50.

"When there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 129 S. Ct. at 1950. If the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the Court should dismiss the claim. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see also Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic*, 127 S. Ct. at 1974). "Plausibility," however, does not refer to the likelihood that the allegations can be proven or even that the allegations are true. *See id.*

Determining "whether a complaint states a plausible claim" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See Ashcroft*, 129 S. Ct. at 1950. While the factual allegations need not be pleaded in great detail, they must be sufficiently precise to raise a right to relief above the speculative level. *See Bell Atlantic*, 127 S. Ct. at 1964–65, 1969 (abrogating the rule of *Conley v. Gibson*, 355 U.S. 41, 44–45 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but not shown—that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (internal formatting omitted). Accordingly, "within the context of the claim alleged, the complaint must contain enough specific allegations of fact to show that if all the alleged facts—and only the alleged facts—are believed to be true, the plaintiff has a claim for relief." *Knox*, 566 F. Supp. 2d at 1222; *see Bell Atlantic*, 127 S. Ct. at 1965; *Robbins*, 519 F.3d at 1247–48.

### III. ANALYSIS

Plaintiff's Sixteenth Claim for Relief—Invasion of Privacy by Appropriation—arises under Colorado law. The Colorado Supreme Court is the final authority on Colorado law. *See Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177–78 (1940). When I am called upon to interpret Colorado law, therefore, I must first look to rulings of the Colorado Supreme Court. *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). If no applicable rulings exist, I must endeavor to predict how the Colorado Supreme Court would rule. *Id*. In such circumstances, I must follow any intermediate state court decision unless other authority demonstrates the Colorado Supreme Court would decide otherwise. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984). The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform my analysis. *Id*. at 1574–75.

The tort of invasion of privacy by appropriation was first recognized by the Colorado Supreme Court in *Joe Dickerson & Associates, LLC v. Dittmar*, 34 P.3d 995 (Colo. 2001). "The elements of this tort are: (1) the defendant used the plaintiff's name or likeness; (2) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or

otherwise; (3) the plaintiff suffered damages; and (4) the defendant caused the damages incurred." *Dittmar*, 34 P.3d at 997.

Plaintiff's allegations against AETN in Claim Sixteen include: AETN included a video clip of Plaintiff being attacked by an African-American inmate in the television program *Gangland: Aryan Brotherhood*; Plaintiff is Mexican-American; while showing the video clip, the narrator states: "At the heart of this brutality are the gangs that dominate American prisons. One of the most infamous are the Aryan Brotherhood. Though small in numbers and outmanned in the yard, Aryan Brotherhood members have carried out contract killings, dominated the drug trade, and intimidated the most notorious personalities to enter thy system"; *Gangland* is currently broadcast in an ongoing and continuous manner on several publicly-available websites and is available for purchase on DVD; AETN used the video of Plaintiff to promote *Gangland* in various marketing broadcasts; AETN generated revenue from *Gangland*; AETN used Plaintiff's likeness and identity for its own purposes, profit, or benefit; Plaintiff requested AETN cease showing *Gangland*, but AETN did not respond to or comply with Plaintiff's request; as a result of the broadcast of *Gangland*, Plaintiff has received threats of violence and death from members of the Aryan Brotherhood, as well as members of rival gang the DC Blacks and ally gang the Mexican Mafia; and Plaintiff suffered resulting damages including lost weight, and inability to sleep, recreate, or bathe.

Plaintiff's allegations are sufficient to state a claim for invasion of privacy by appropriation under Colorado law. "A plaintiff's claim of invasion of privacy by appropriation of her name and likeness will not succeed, however, if the defendant's use of the plaintiff's name and likeness is privileged under the First Amendment." *Dittmar*, 34 P.3d at 997. Whether the

First Amendment privilege applies is a question of law. *See id.* at 1003.

The First Amendment "permits the use of a plaintiff's name or likeness when that use is made in the context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of legitimate public concern." *Dittmar*, 34 P.3d at 1003. The Magistrate Judge concluded that the video of Plaintiff, as alleged, did not "reasonably relate" to a documentary about a racist prison gang or the Aryan Brotherhood, and, accordingly, recommended that application of the First Amendment privilege would be inappropriate in the context of a Rule 12(b)(6) motion. I conclude the Magistrate Judge's recommendation was incorrect.

As a matter of law, both the *Gangland: Aryan Brotherhood* program and the video clip of Plaintiff, as alleged, concern matters that are newsworthy or of legitimate public concern. *See Johnson v. California*, 543 U.S. 499, 533–34 (2005) (discussing interest in prison gangs, including the Aryan Brotherhood); *Pell v. Procunier*, 417 U.S. 817, 830–31 (1974) (discussing interest in violence among inmates). The Colorado Supreme Court held in *Dittmar* that, so long as the contents of the publication—in this case, the fact of Plaintiff's altercation with another inmate at ADX—is newsworthy, "then they do not cease to be newsworthy when subsequently communicated by a different sort of publisher"—in this case, AETN's *Ganglang: Aryan Brotherhood* program. *See Dittmar*, 34 P.3d at 1004. So long as the video clip was newsworthy—as it is undoubtedly alleged to be—AETN's decision to publish the clip in the context of the *Gangland* program is protected despite the fact that AETN may have published the clip or the *Gangland* program in order to increase viewership, sell videos, or otherwise make a profit. *See Dittmar*, 34 P.3d at 1004; *see also Anderson v. Suiters*, 499 F.3d 1228, 1236–37 (10th Cir. 2007). Dismissal on First Amendment privilege grounds is therefore appropriate.

Case 1:08-cv-00153-LTB-MEH   Document 180   Filed 08/21/09   USDC Colorado   Page 8 of 8

## IV. CONCLUSION

Accordingly, Defendant AETN's Motion to Dismiss Claims 15 and 16 Pursuant to FED. R. CIV. P. 12(b)(6) [**Docket # 117**] is GRANTED.

Dated: August   21  , 2009.

BY THE COURT:

   s/Lewis T. Babcock   
Lewis T. Babcock, Judge